## Gilpin Township Sewage Authority
## v. Commonwealth

*David C. Suckling* and *Victor K. Lynch,* for appellant.
*Patrick C. McGinley,* for Commonwealth.

COHEN, Member, October 22, 1974.—This matter is before the board on appeal by Gilpin Township Sewage Authority, Leechburg, Armstrong County, Pa. The appeal is from the action of the Pennsylvania Department of Environmental Resources in refusing to accept an application for Federal funds for the construction of a sewer system to serve Gilpin Township, Armstrong County, Pa. For the reasons set forth below, the appeal is sustained and the action of the department is reversed.

FINDINGS OF FACT

1. Appellant in this case is Gilpin Township Sewage Authority, R. D. 1, Box 132, Leechburg, Armstrong County, Pa.

2. Appellee is the Pennsylvania Department of Environmental Resources (hereinafter "department").

3. The department administers a program by which it certifies to the Federal government such sewerage construction projects within the Commonwealth which are eligible for Federal grants under the provisions of Title II of the Federal Water Pollution Control Act of June 30, 1948, 86 Stat. 816, as amended, 33 USC §1251, et seq. In the administration of the program, the department is required to certify to the Federal government those projects which are consistent with an applicable State plan and to assign a priority to such project in accordance with the State plan.

4. The department, in administering its responsibilities relative to the Federal grant program, has

established a procedure by which it receives applications from municipalities claiming entitlement to Federal grants for the construction of sewage treatment facilities. Upon receipt of such applications and supporting data and documents, the department reviews the submission to determine whether the proposed facility is entitled to be given a priority and whether the facility is in conformity with the departmental plan in force at the time of the submission.

5. Under the Rules and Regulations of the Environmental Quality Board of the Commonwealth, 25 Pa. Code § 103.1, et seq., it is required that prior to, or concurrent with, an application for a Federal construction grant, there must be submitted to the department an acceptable application for a State permit which contains necessary and sufficient documentation to support the application for the permit: 25 Pa. Code § 103.3(b).

6. Under the provisions of 25 Pa. Code § 103.5(4)(a), it is provided as follows:

"The Department shall annually prepare a priority list of projects from applications on hand as of March 1, said list to remain intact until the allocation of fiscal year funds for which the list was prepared have been obligated, except that projects becoming ineligible shall be removed from the list."

7. Ordinarily, any application for a Federal grant received by the department with regard to any fiscal year must, under Environmental Quality Board regulations, be received by the department on or before March 1st of the previous fiscal year.

8. On December 17, 1973, the department sent a notice to consulting engineers, including Chester Engineers, appellant's engineers, which read, in relevant part, as follows:

"Because of problems that we have encountered with several sewerage applications submitted in 1973, I think it is important that you be made aware of several requirements that will be strictly enforced this year. As you know, the Sewerage Manual requires the submission of properly completed and attested application forms, modules, and construction plans and specifications. A check in the amount of $25.00, a project evaluation form, a soil erosion and sedimentation control plan prepared in strict accordance with the Erosion and Sedimentation Control Manual, and all requirements of Act 537 or appropriate municipal letters and resolutions are also required. Application must also be made concurrently for stream encroachments including stream crossings, outfalls and headwalls, which can be done on our new application forms. You must concurrently file applications for stream relocations with our Division of Dams and Encroachments in Harrisburg. A copy of the stream relocation application must be filed with your sewerage application for our records. I further call your attention to Sections 12 and 13 of the Sewerage Manual which list the requirements for submission of plans and specifications.

"Failure to follow the requirements will result in non-acceptance of your sewerage application and loss of grant eligibility for your clients. This policy will be followed statewide and should not be considered as applicable only to the Pittsburgh Office."

9. On February 7, 1974, the department sent another notice to consulting engineers, including Chester Engineers, substantially similar to the letter of December 17, 1973, which contained, inter alia, the following additional language:

"In the past, our Regional staffs have been lenient

in the quality of plans, specifications and other documents accepted for grant-eligible projects. This situation has led to serious problems both in project application processing and the effective use of Federal grant funds allocated to Pennsylvania. While the new grant processing regulations adopted by the Environmental Quality Board on December 20, 1973 (see Volume 3, Pennsylvania Bulletin, page 2957) allow that plans and specifications suitable for advertising for bids are not required until projects are certified, they still require that plans and specifications suitable to allow for Department review of the project must accompany the application. We will no longer accept partially complete plans, modules and specifications or improperly documented applications."

10. On February 28, 1974, appellant submitted to the department an application for a Federal construction grant together with a permit application for a sewer and pumping station designed to collect domestic sewage from Gilpin Township and convey the same to the Kiski Valley Water Pollution Control Authority, a joint authority of 13 municipalities in Armstrong and Westmoreland Counties.

11. On March 7, 1974, the department advised appellant that it could not accept appellant's application for a Federal construction grant for fiscal year 1975 for the reason that the application on file as of March 1, 1974, was materially incomplete as to items in letters of December 17, 1973, and February 7, 1974, and therefore, would be ineligible for consideration for the construction grant for fiscal year 1975.

12. Prior to the year 1974, Region V of the department had a practice of accepting incomplete applications for Federal funds on or before March 1st of any year and working with the applicant to complete its application within a reasonable time thereafter. Al-

though such practice was not in conformity with departmental regulations, it nevertheless continued for many years prior to 1974.

13. Appellant had completed the engineering phase of the Gilpin Township project in the latter part of April 1974, and, had the prior practice of Region V (Pittsburgh office) of the department been in effect in 1974, appellant would have been considered as eligible for a Federal construction grant for the fiscal year 1975.

14. Appellant's consulting engineers, Chester Engineers, on December 17, 1973, and thereafter, were diligently working to complete the necessary engineering phase of appellant's application for Federal funds.

15. But for the newly adopted practice on the part of Region V ·of the department strictly to adhere to the March 1st deadline for completed applications, which policy was mandated by the central office of the department, appellant's application for Federal funds would not have been·summarily rejected.

16. The change of policy on the part of the department occurred at a time with regard to appellant's project as to disappoint expectations that hitherto would have been fulfilled.

17. Given the degree of completion of the engineering phase of appellant's project even as of December 17, 1973, the notice of the change of policy on the part of the department did not give appellant's engineers sufficient time within which, relying on the past conduct of the department, to complete its application by March 1, 1974.

## DISCUSSION

This case involves consideration of administrative efficiency, expediency and reasonableness, general fairness in the administration of the Federal grant pro-

gram by the department and fairness to appellant in light of the expectations built up by the department's past practice in Region V. It is further complicated by the fact that the issues raised by appellant may be moot for the reason that the Federal funds for the construction grant for the fiscal years 1973 and 1974 have been substantially impounded by order of the President in December of 1972. However, there are several civil actions in the Federal courts by States seeking to have these impoundments set aside. See New York City v. Train, 494 F. 2d 1033 (D. C. Cir., 1974), and the list of cases set forth in footnote two of that opinion as being filed as of December 12, 1973. On April 29, 1974, the Supreme Court of the United States granted certioraris in New York City v. Train, supra, and Campaign Clean Water, Inc., v. Train, 489 F. 2d 492 (4th Cir., 1973). Depending upon the outcome of these cases in the United States Supreme Court, and congressional action with regard to appropriations for this grant program, the issue of mootness of this case will be determined. However, inasmuch as there is a possibility that the above-referred to impoundments may be declared illegal, we deem it appropriate to adjudicate this matter at this time.

Under the provisions of the Federal Water Pollution Control Act, 33 USC §1251, et seq., the Federal government makes grants to States and municipalities for construction of sewage treatment facilities. Under the provisions of this act and its predecessor legislation (commonly "P. L. 660") State Water Pollution Control Agencies determine priorities for construction grants for sewage treatment projects within each state. Within Pennsylvania, the Department of Environmental Resources administers this program. The regulations of the Environmental Quality Board which set up the method of administration of this program are found in

25 Pa. Code §103.1, et seq. These regulations, and their predecessor regulations of the now defunct Sanitary Water Board, require that prior to or concurrent with the filing for an application for a Federal construction grant there be filed an application for a permit for the treatment facilities or sewers concerning which the application is made: 25 Pa. Code §103.3(b). This provision reads as follows:

"An acceptable application for a State permit which contains *necessary and sufficient documentation to support the application* shall be submitted concurrent with or prior to submission of an application for a construction grant." (Emphasis supplied.)

Section 103.4(a) of these regulations requires the department to establish a priority list of projects from applications on hand as of March 1st. Inasmuch as appellant's application concededly did not strictly comply with the requirements of section 103.3(b) of these regulations, its application was returned and was not considered on hand as of March 1, 1974. Therefore, appellant could not be assigned a priority for the receipt of a Federal construction grant for the fiscal year 1975.

Under the prior practice, however, there is a substantial likelihood that appellant's application for a construction grant would not have been returned, but that the department would have given appellant a reasonable time within which to complete its application. Under the policy of strict compliance with the regulations mandated by the Central Office of the department, Region V of the department felt impelled to return the admittedly incomplete application.

We have no quarrel with the departmental policy requiring strict compliance with the requirements of 25 Pa. Code §103.3(b). If the only issue in this case were that of strict compliance, we would have no hesi-

tancy in upholding the department in this case. However, when the department decides after a substantial period of leniency to state that it no longer adheres to such practice but, on the contrary, will thereafter require strict adherence to the letter of the regulations, it must then be prepared to justify its action in terms of the time it notified applicants and their consulting engineers of the new policy. Especially is this so where, as in this case, there is no question but that appellant's consulting engineers were diligent in their actions to complete the application within the requisite time period. The record in this case is clear that Chester Engineers were substantially complete in their engineering work with regard to appellant's application when the change of policy on the part of the department occurred. Thereafter, they acted with due diligence and all deliberate speed to meet the requirements of the aforementioned regulations. There was no way, however, that they could have submitted the application in its entirety on March 1 of 1974. But this would not have been fatal to appellant's application in prior years. Appellant would have received under the old dispensation a reasonable time within which to comply.

For reasons that are not clear on the record the department decided to change its policy in this regard approximately two months before it became effective. This being the case, we are of the opinion that the department unreasonably chose a time within which to implement an otherwise reasonable and desirable policy by giving applicants insufficient time to adjust their priorities in such a manner as to attempt realistically to comply with the mandate of the regulation. With regard specifically to appellant and its consulting engineers, the record is clear that they were caught "off balance" by the department's action of December

17, 1973. Up to that time, they were working on the assumption that their submittal of March 1, 1974, would be sufficient to comply initially with department requirements and that they would be allowed a reasonable time within which to submit additional data. However, when the new mandate arrived, the engineers for appellant could not realistically take any action which would have met the requirements of the regulation by March 1, 1974. Under these circumstances, we think that the department acted unreasonably in not giving appellant an additional reasonable time within which to submit an application which could be reviewed on its merits. For this reason, we reverse the department's action in this case.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the parties and the subject matter of this proceeding.

2. Neither Gilpin Township Sewage Authority nor its consulting engineers, Chester Engineers, were guilty of any negligence or delay in submitting its application for Federal funds to the Department of Environmental Resources on February 28, 1974.

3. The application submitted by Gilpin Township Sewage Authority to the Department of Environmental Resources on February 28, 1974, was not a complete application as that term is understood in the engineering profession.

4. The requirement of the Department of Environmental Resources that the mandate of 25 Pa. Code §103.3(b) be strictly adhered to is not, in itself, an unreasonable policy for the department to pursue.

5. The announcement of the policy of strict compliance with the requirements of 25 Pa. Code §103.3 (b), representing a change in prior practice, was not made within a reasonable time to allow applicants and

their engineers to make appropriate changes in their activities.

6. The action of the department in refusing to accept the submission of appellant, Gilpin Township Sewage Authority, because of its incompleteness, was unreasonable under the circumstances of this case.

## ORDER

And now, October 22, 1974, the appeal of Gilpin Township Sewage Authority is hereby sustained and the action of the Department of Environmental Resources in refusing to accept their application for Federal construction funds for the fiscal year 1975 is hereby set aside. It is further ordered that the department shall consider for review the application of Gilpin Township Sewage Authority for Federal construction funds for the fiscal year 1975 when said funds, if ever, become available and decide what priority rating the said township is to receive.